**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| RICHARD BUCHANAN, | CASE NO. 10-CV-1135 |
| Petitioner, | 05-CR-0199 |
| vs. | **ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |
| UNITED STATES OF AMERICA, | |
| Respondent. | [ECF Nos 556, 588, 593, 596, 601, 604, 606, 610.] |

**INTRODUCTION**

Before the Court is Petitioner Richard Charles Buchanan's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence for distribution of methamphetamine. Buchanan seeks relief on several grounds, including ineffective assistance of counsel, violations of his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and prosecutorial misconduct. For the reasons given below, Buchanan's motion is denied. The Court declines to grant a certificate of appealability.

**BACKGROUND**

In February 2005, a federal grand jury returned a multiple-count indictment against eleven individuals. Buchanan was charged with distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Buchanan entered a not guilty plea.  He was tried by a jury and convicted on Counts 16, 17, 19, 20, and 21.  The government's theory, proved at trial, was that Buchanan sold methamphetamine to government informant Sean Guerra on five occasions, either directly or through co-defendant Nancy Soria.  Three of the transactions (Counts 16, 17, and 19) involved Soria.  They occurred on May 28, 2004; June 3, 2004; and July 8, 2004.  The remaining transactions (Counts 20 and 21) involved only Buchanan.  They occurred on August 6, 2004 and August 19, 2004.  Soria was charged with Buchanan on Counts 16, 17, and 19.  Unlike Buchanan, Soria pled guilty.

Trial began on May 1, 2007.  Buchanan was represented by attorney Barbara Donovan.  The government called eight witnesses.  Chief among them was Guerra. Guerra testified about making telephone calls to Buchanan or Soria to arrange drug transactions.  He testified that he then purchased the methamphetamine.  He testified that he paid a tax so that Buchanan would permit him to sell narcotics in the area. The government presented recordings of the "set up" calls, body wire recordings of the transactions, as well as surveillance photographs and video clips of Buchanan and Soria.  The government also presented the seized methamphetamine.

Another government witness was Perry McIvor, a former detective with the San Diego Police Department.  McIvor was part of a multi-agency task force investigating Buchanan.  McIvor testified about recruiting Guerra as an informant, Guerra's compensation, Guerra's criminal history, and the process of using Guerra to purchase the methamphetamine.

Donovan focused on attacking Guerra's credibility.  The defense rested without calling any witnesses.

Buchanan was convicted on May 7, 2007.  He was sentenced to 240 months on one count and 545 months for each of the remaining counts with all sentences running concurrently; five years of supervised release; a $100 special assessment; and a fine of $6,812.00.  The sentence was also to run concurrent with a state court

sentence for kidnaping and other felonies.[1]

Buchanan filed a notice of appeal and was appointed new counsel, Gerson Simon. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), Simon filed a brief stating there were no grounds for relief and moved to withdraw as counsel of record. Buchanan was provided an opportunity to file a pro se supplemental brief. No pro se supplemental brief was filed. On April 24, 2009, the Ninth Circuit, finding no arguable grounds for relief on direct appeal, granted the attorney's motion to withdraw and affirmed the district court's judgment. The mandate issued on May 18, 2009.

Now, Buchanan collaterally attacks his conviction on the following grounds: (1) the government suppressed evidence in violation of *Brady v. Maryland*; (2) prosecutorial misconduct; and (3) ineffective assistance of trial and appellate counsel. Buchanan also asks for an evidentiary hearing. The United States filed a Response. (ECF No. 559.) Buchanan filed a Traverse. (ECF No. 589.) The United States filed a Reply to address new arguments and evidence raised in the Traverse. (ECF No. 598.) Buchanan filed a "Rebuttal" to the Reply (ECF No. 608) as well as several ancillary motions.[2]

---

[1] In April 2006, Buchanan was found guilty by a San Diego Superior Court jury of kidnaping for ransom or extortion, assault with a semi-automatic firearm, making a criminal threat, possession of a firearm by a felon, transportation of a controlled substance, possession of a controlled substance for sale, and possession of a controlled substance. He was sentenced to 45 years-to-life plus ten years in prison.

[2] Buchanan's motion for reconsideration of a prior order (ECF No. 588), his request for an order enjoining the United States Department of Justice from withholding agency records (ECF No. 596), his request for leave to file a rebuttal (ECF No. 601), and his motion to strike (ECF No. 606) are denied.

Buchanan's requests for judicial notice (ECF Nos. 593, 604, 610) are granted in part. The Court takes judicial notice of those exhibits that are publically filed court documents. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ( "[Courts] may take judicial notice of court filings and other matters of public record."). The remaining materials are not proper subjects for judicial notice. Buchanan's request for discovery is denied.

**DISCUSSION**

Buchanan brings the present motion to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides that a federal prisoner seeking relief from a custodial sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). "Errors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F.2d 970, 973 (9th Cir. 1981).

Under § 2255, the court shall grant an evidentiary hearing "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "The standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). When a motion "presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required." *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (evidentiary hearing unnecessary if allegations when viewed against the record are palpably incredible or patently frivolous).

**I.   Procedural Default**

The government argues that all of Buchanan's claims are procedurally barred

because Buchanan failed to raise them on direct appeal.  Accordingly, the Court first considers procedural default.

Section 2255 "is not designed to provide criminal defendants multiple opportunities to challenge their sentence." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).  The general rule is that a criminal defendant procedurally defaults his claims if he could have raised them on direct appeal but failed to do so. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003).  "The procedural-default rule is neither statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504.  The Supreme Court has carved out an exception for claims challenging a federal conviction based on ineffective assistance of counsel. *Id.* at 509.  Such claims may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

For other defaulted claims, federal courts may consider the merits if a petitioner can show: (1) "cause" for not raising the claim sooner and "actual prejudice" resulting from the alleged error; or (2) his "actual innocence." *Ratigan*, 351 F.3d at 960.

The standard for "cause and prejudice" is as follows.  "Generally, to demonstrate 'cause' for procedural default, an appellant must show that 'some objective factor external to the defense' impeded his adherence to the procedural rule." *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

*United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  A district court need not address both the cause and prejudice prongs if the petitioner fails to satisfy one.  *Id.* at 168.

The standard for overcoming a procedural default via "actual innocence" is more stringent.  "To invoke the actual innocence exception, [Buchanan] must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'"  *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

By failing to file an appellate brief, Buchanan has defaulted on all claims except those alleging ineffective assistance of counsel.  He concedes that the grounds for relief asserted in his petition "have not been presented until now."  Buchanan's argument for why the Court should look past those defaults, however, is not entirely clear.  In his Petition, he appears to suggest that cause-and-prejudice applies because he "suffered serious health issues while at jail" and was "overwhelmed with legal matters."  In his Traverse, however, he makes vague assertions of government interference.[3]  He also claims to be actually innocent .

The Court will address whether he has made the requisite showing of cause and prejudice in the context of his individual claims.  To the extent he asserts the actual innocence exception to the procedural bar, his argument clearly fails and the Court can dismiss it here at the outset.  At trial, the government offered substantial evidence of Buchanan's guilt.  Nothing Buchanan presents here—be it his "new" evidence, his allegations of trial defects, or his unsupported claims of perjury and planted evidence—injects sufficient doubt about the validity of his conviction to

---

[3]  He claims, for example, that the government interfered with his appeal by sending a confidential informant "again and again" to mislead him into believing that the informant would be hiring an attorney to assist him.  (Traverse 5-6.)  He also vaguely asserts that his legal materials "disappeared" or were confiscated.  (Traverse 6.)

warrant setting aside the defaults.  If Buchanan does find a way to get past the procedural bar, it will not be through the narrow gateway of actual innocence.

The Court now turns to the claims themselves.

## II.   *Brady* **Violations**

Buchanan contends that the government violated the disclosure rule of *Brady v. Maryland* in several respects.  Specifically, he claims that the following was improperly suppressed: (1) a written report memorializing law enforcement's January 24, 2005 interview of Soria; (2) evidence relating to a state wiretap of an individual named Ernesto Torres; (3) *Giglio* material relating to Geurra; and (4) *Henthorn* material relating to McIvor.

*Brady* and its progeny "require the state to disclose all material evidence that could exculpate the defendant, including evidence that could be used to impeach one of the prosecution's witnesses or undermine the prosecution's case." *Milke v. Ryan*, 711 F.3d 998, 1003 (9th Cir. 2013).  To prove a *Brady* violation, a petitioner must show: "(1) that the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) that it was suppressed by the state, either willfully or inadvertently, and (3) that it was material." *Henry v. Ryan*, 720 F.3d 1073, 1080 (9th Cir. 2013) (citing *Strickler v. Greene*, 527 U.S. 263, 280-82 (1999)).

Under *Brady*, "[e]vidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial." *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002).[4]  Put another way, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "Reversal of a conviction or sentence is required only upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a

---

[4]  "The terms 'material' and 'prejudicial' are used interchangeably in *Brady* cases. Evidence is not 'material' unless it is 'prejudicial,' and not 'prejudicial' unless it is 'material.' Thus, for *Brady* purposes, the two terms have come to have the same meaning." *Benn*, 283 F.3d at 1053 n

different light as to undermine confidence in the verdict." *United States v. Olsen*, 704 F.3d 1172 (9th Cir. 2013) (quotations omitted).   An analysis of the withheld evidence must take into consideration the entire record. *Benn*, 283 F.3d at 1053.

In the context of a *defaulted* Brady claim, the "cause and prejudice" test parallels aspects of the substantive analysis. *Banks v. Dretke*, 540 U.S. 668, 691 (2004).  For example,  a petitioner shows 'cause' for the default when the reason for his failure to raise the claim earlier was the government's suppression of relevant evidence. *Id.* Similarly, the prejudice component mirrors *Brady*'s materiality prong. *Id.*

## A.    Soria Interview

Buchanan contends that Soria gave a January 2005 interview to law enforcement that exonerated him and the government refused to disclose it despite an explicit request.  For support, he attaches an eight-page report from the FBI memorializing the interview.[5]  (Pet., Exh. 1.)  He alleges that he did not obtain this report "until after conviction."  (Traverse 12.)

Buchanan highlights the following passage: "SORIA was questioned regarding her involvement with methamphetamine and the sale of narcotics for anyone or to anyone.  SORIA advised she did not sell for BUCHANAN.  Her narcotics transactions were for personal use only."  Buchanan claims he could have used this: (1) as exculpatory evidence; (2) to challenge the veracity of surreptitiously recorded statements attributed to Soria that "implicat[ed] movant as being some sort of boss to her in the drug sales business"; and (3) to contest the prosecution's arguments in summation that Buchanan was directing Soria and setting the price of the narcotics.  (Pet. 6-8.)

Buchanan has not shown prejudice.  As exculpatory or impeachment evidence, the report is simply not that potent.  Buchanan cites a favorable excerpt

---

[5]  The United States does not challenge the authenticity of this report.

but he ignores the incriminating statements.  There were several.  Soria agreed Buchanan was a member of the Mexican Mafia and that she advised people to do things for him "because he is a Carnal."  She admitted to collecting "taxes" from Guerra and sharing the money with Buchanan.  And, although she initially denied being with Buchanan on the day of a large drug sale to Guerra, she backtracked when told she had been seen with him, noting that she "was on a sick one" (high on methamphetamine) that day and had to be reminded of what she did.  Had Buchanan introduced favorable aspects of the report, the jury would have been exposed to the rest.  *See* FED. R. EVID. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.")  To the extent Buchanan contends that he could have impeached the government's closing argument with the report, he is mistaken.  Attorney argument is not subject to impeachment.

The record reflects strong evidence of Buchanan's guilt.  There are no grounds to believe that Soria's statement to law enforcement several months after Buchanan's arrest would have put the whole case in such a different light as to undermine confidence in the verdicts.[6]  Thus, even if Buchanan is right that the interview was favorable, it was not material for *Brady* purposes.  See *Olsen*, 704 F.3d at 1183 ("Even if evidence favorable to the defendant has been suppressed or not disclosed by the prosecution, there is no true *Brady* violation unless that information is material.").  Because Buchanan has not shown materiality under *Brady* or prejudice sufficient to overcome his default, the Court need not reach the issue of "cause" for not raising the issue sooner.  *See Strickler*, 527 U.S. at 296. This claim is procedurally barred.

---

[6]  Indeed, Soria was not involved in two of the five transactions for which Buchanan was convicted.

## B.    Wiretap (Torres)

Buchanan argues that the government improperly suppressed evidence of a state wiretap on an individual named Ernesto Torres.  In 2006, Buchanan was convicted in state court of kidnaping Torres, among other felonies.  Buchanan contends he did not learn about the state's wiretap on Torres until after his federal trial.  (Pet. 10.)

Buchanan's *Brady* argument is as follows.  Certain law enforcement officers, including McIvor, testified in both his state and federal trials. He believes that certain aspects of their testimony in the state trial are contradicted by the very existence of a Torres wiretap.  He believes that he could have used those perceived inconsistencies to attack the officers' credibility in the federal trial.

This is reaching.  First, there was no suppression.  The record reflects that the government informed Donovan about the existence of the wiretap before Buchanan's federal trial.  (*See* Pet., Exh. 2.)  That Buchanan may have been personally unaware of it does not render the government's conduct a *Brady* violation.  Second, there are no grounds for believing that more specific information about the wiretap was impeaching evidence that had to be disclosed.  The Torres wiretap was not mentioned at all during his federal trial.  Furthermore, Buchanan's allegation that McIvor perjured himself in the state trial has been rejected by courts reviewing that conviction.  *See Buchanan v. Beard*, No. 10-0423, 2013 WL 2390435, at *8 (S.D. Cal. May 29, 2013) ("The state court's denial of Buchanan's perjury claims was neither contrary to, nor an unreasonable application of, clearly established law.")  There is simply no reason for the Court to conclude that additional information about the wiretap would have put the whole federal case in such a different light as to undermine confidence in the verdict

Because Buchanan has not shown prejudice sufficient to overcome his default, the Court need not reach the issue of "cause" for not raising the issue sooner.  This

1    claim is procedurally barred.

2        **C.    *Henthorn* material (McIvor)**

3        Buchanan next claims the government violated its obligations under *United*

4    *States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) by not reviewing McIvor's

5    personnel file for potential impeachment material. This argument is not persuasive.

6        Buchanan has not shown that a *Henthorn* violation occurred, much less

7    prejudice stemming from such a violation.  *Henthorn* stands for the proposition that,

8    upon request, the government has a duty to examine personnel files of testifying

9    officers for impeachment materials.  931 F.2d at 31.  The Ninth Circuit has clarified,

10   however, that a federal prosecutor "is not obligated to review state law enforcement

11   files not within its possession or control," even when state personnel are working

12   with federal personnel.  *United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th

13   Cir. 1992); *see also* FED. R. CRIM. P. 16(a)(1)(E)(i) ("Upon a defendant's request,

14   the government must permit the defendant to inspect and to copy or photograph

15   books, papers, documents, data, photographs, tangible objects, buildings or places,

16   or copies or portions of any of these items, if the item is within the government's

17   possession, custody, or control and . . . the item is material to preparing the defense .

18   . . .").

19       At a pre-trial hearing, the United States told the defense that it would not be

20   searching the personnel records of non-federal officers, such as McIvor.  Buchanan

21   claims this was constitutional error because McIvor was part of a multi-agency

22   investigation.  The Court disagrees.  "The fact that state law enforcement personnel

23   were involved in the underlying federal criminal investigation, does not make their

24   personnel files 'under the control of,' or 'in the possession of' the federal

25   prosecutor." *United States v. Rivaz-Felix*, No. 12-CR-00340, 2013 U.S. Dist. LEXIS

26   55895, at *13 (E.D. Cal. Apr. 18, 2013).  Here, Buchanan has presented no evidence

27   that the federal government had possession or control of McIvor's personnel file.

28

He also has not shown that impeaching information would have been found therein. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1978). Because Buchanan has not shown that he was prejudiced by the federal government's decision not to investigate McIvor's personnel file, the Court need not reach the issue of "cause" for not raising the issue sooner. This claim is procedurally barred.

### D. *Giglio* material (Guerra)

Buchanan next asserts that the government failed to disclose sufficient credibility information about Guerra as required by *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972).

Prosecutors have an obligation under *Brady* to disclose material information that bears on the credibility of government informants. *See, e.g.*, *Giglio*, 405 U.S. at 154-55. "[I]nformation in the possession of the prosecutor *and* his investigating officers that is helpful to the defendant, including evidence that might tend to impeach a government witness, must be disclosed to the defense prior to trial." *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009).

At a pre-trial hearing, Donovan requested all impeachment material for the government's confidential informant. The prosecutor stated that Guerra's state-side cooperation agreement was not within the custody of the federal government, although he was familiar with the terms. Accordingly, he faxed to the defense that evening a two-page, two-year-old memorandum from the district attorney's office. (Reply, Exh. 3.) The memorandum set out Guerra's criminal history, a list of prior or pending cases in which Guerra was a witness, sentencing benefits that Guerra had received, and contact information for individuals familiar with his compensation. The prosecutor also provided the defense with Guerra's eight-page "rap sheet."

Buchanan maintains this was inadequate. He argues, for example, that the government should have provided the state's written agreement with Guerra. The Court is not convinced. Buchanan has shown no prejudice by his having a summary rather than the original document. A hunch that certain promises or rewards went undisclosed is insufficient.

Similarly, in the Traverse, Buchanan argues that the government suppressed information that Guerra and McIvor testified at the state criminal trials of an individual named Fletes.[7] Fletes was apparently tried twice. The government concedes that these trials were not listed on the fax. It provides documentation, however, that Guerra and McIvor did not testify at the first trial. As for the second trial, Guerra testified for twenty-nine minutes; McIvor for twenty-four. (Reply, Exh. 2.) The entire trial lasted two weeks. Buchanan provides scant evidence about the substance of Guerra's and McIvor's testimony; he merely speculates, based on the jury's failure to reach a verdict, that they were unconvincing and he could have used this to impeach. Such bare allegations do not establish prejudice. *See Agurs*, 427 U.S. at 109-10 (1978) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.")

At trial, Donovan extensively cross examined Guerra. The jury heard that he was compensated for his activities as an informant, that he received sentencing benefits, and that he received assistance with a citizenship matter. The jury also heard about Guerra's drug use and criminal histories. Buchanan has not made an adequate showing that any undisclosed evidence would have further damaged his credibility.

Because Buchanan has not shown materiality under *Brady* or prejudice

---

[7] Although the Court need not address arguments raised for the first time in a Traverse, it does so here out of an abundance of caution. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.").

sufficient to overcome his default, the Court need not reach the issue of "cause" for not raising this issue sooner. This claim is procedurally barred.

## III. Prosecutorial misconduct

The Supreme Court has recognized that "prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quotations, brackets, and citations omitted). To show prejudice, Buchanan must show that, absent the alleged misconduct, there is a "reasonable probability that the result of the proceeding would have been different." *Hein v. Sullivan*, 601 F.3d 897, 905 n.4 (9th Cir. 2010).

Buchanan contends that the government engaged in misconduct both during its investigation and during his trial.

First, Buchanan argues that the prosecutor committed misconduct by lying to the Court about Soria's January 2005 interview. In response to a defense request for her statement, the prosecutor told the Court that it was not exculpatory. (Tr. 415-16.) That remains the government's position. Whether the interview was, on balance, more inculpatory than exculpatory or more exculpatory than inculpatory is of no consequence now, however, because in the context of the entire record it was not material for Brady purposes. Buchanan has not shown that there is a reasonable probability the result of the proceeding would have been different absent the government's in-court representation. Because he has not shown prejudice, his allegations are insufficient to overcome his procedural default.

Second, Buchanan argues that the government committed misconduct by suppressing information about the Torres wiretap. As explained above, the wiretap's existence was not suppressed from the defense. To the extent more specific information went undisclosed, Buchanan has failed to show that it was even relevant to his federal proceeding, much less that there is a reasonable probability the result of the proceeding would have been different absent the government's conduct.

1    Because he has not shown prejudice, his allegations are insufficient to overcome his

2    procedural default.

3        Third, Buchanan argues that the government delayed in producing a body wire

4    recording until trial. Delayed disclosure "only requires reversal if 'the lateness of

5    the disclosure so prejudiced [Buchanan's] preparation or presentation of his defense

6    that he was prevented from receiving his constitutionally guaranteed fair trial."

7    *United States v. Shelton*, 588 F.2d 1242, 1247 (9th Cir. 1998). Considering the

8    weight of the evidence in this case. Buchanan has not shown there is a reasonable

9    probability the result of the proceeding would have been different absent the delayed

10   disclosure. Because he has not shown prejudice, his allegations are insufficient to

11   overcome his procedural default.

12       Fourth, Buchanan alleges that the government choreographed interactions

13   between informants to "create documentation on movant in relation to drugs." (Pet.

14   24-25.) He submits an "investigator's report," which allegedly includes such

15   manufactured information. Buchanan again fails to show prejudice, however. This

16   report was not even referenced during trial. Even if the Court accepted Buchanan's

17   description of its contents (and there is no reason to suggest that it should),

18   Buchanan has not shown how, absent the government's conduct, there is a

19   reasonable probability the result of the proceeding would have been different.

20   Because he has not shown prejudice, his allegations are insufficient to overcome his

21   procedural default.

22       Along the same lines, Buchanan claims that he was falsely identified as the

23   speaker on one recorded telephone call, played at trial, that was really a conversation

24   between Guerra and a third party. (Pet. 25.) This claim fares no better. Even if

25   Buchanan was not a participant on that call, he offers no proof that the government

26   knowingly presented false evidence or that, absent the government's presentation of

27   this particular evidence, there is a reasonable probability the result of the proceeding

28

would have been different.  Because he has not shown prejudice, his allegations are insufficient to overcome his procedural default.

Because Buchanan has not shown that any of the alleged acts of misconduct, cumulatively or in isolation, worked to his actual or substantial disadvantage, he has not shown prejudice sufficient to overcome his procedural default.  The Court need not reach the question of cause for not raising these issues sooner.  His claims of prosecutorial misconduct, like his Brady claims, are procedurally barred.

## IV.   Ineffective Assistance of Counsel

Buchanan claims that both his trial counsel and appellate counsel provided ineffective assistance.  A prisoner may raise ineffective assistance of counsel claims for the first time in a § 2255 petition.  *Massaro*, 538 U.S. at 509.  Therefore, for these claims at least, the procedural default rule is not in play.

A § 2255 movant alleging ineffective assistance of counsel must show that: (1) "counsel's performance was deficient;" and (2) the "deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.

To prove the first prong, the movant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases.  *Lambert v. Blodgett*, 393 F.3d 943, 979-80 (9th Cir. 2004).  "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the Defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential [because it] is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of

counsel was unreasonable." *Id.* at 689.  For this reason, there is a strong

presumption "that counsel's conduct was within the wide range of reasonable

assistance, and that he exercised acceptable professional judgment in all significant

decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990); *see also*

*Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (defendant "bears the

heavy burden of proving that counsel's assistance was neither reasonable nor the

result of sound trial strategy").

To prove *Strickland*'s second prong, the movant must show that "counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." *Strickland*, 466 U.S. at 687.  There must be "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.*  "Bald assertions" of ineffective

assistance of counsel do not entitle a prisoner to an evidentiary hearing. *Jones v.*

*Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

## A.  Ineffective Assistance of Trial Counsel

Buchanan claims that Donovan, his trial counsel, provided ineffective

assistance because she "submitted no defense at trial at all."  His examples of

deficient performance, however, are not persuasive.

First, he asserts that Donovan "refused to conduct voice analysis of recordings

used against movant at trial, as movant requested."  (Pet. 8.)  He maintains that the

voice attributed to him on "CD # 57"—one of several "set up" calls—was someone

else.

By this bare allegation, Buchanan does not show deficient performance.

Donovan did not ignore the issue of voice identification; she simply attacked it from

a different angle.  She challenged Guerra's credibility, and then reminded the jury in

summation that "all these taped phone conversations that you have heard[,] we only

have the word of Mr. Sean Guerra that the voice does belong to Richard Buchanan. There's been no other evidence by the government that it is, in fact, the defendant's voice." (Tr. 448.) Buchanan has failed to show that this approach, rather than a scientific voice analysis, fell outside the wide range of reasonable assistance. *See Harrington v. Richter*, 131 S. Ct. 770, 789 (2011) ("Counsel is entitled to balance limited resources in accord with effective trial tactics and strategies."(quotations omitted)). In short, Buchanan has failed to satisfy *Strickland*'s first prong.

He also has failed to show prejudice. He provides no evidence, such as a declaration from an expert, that a voice analysis would support his claim. All he offers is a conclusory, self-serving statement. He does not carry his burden of demonstrating that but for Donovan's failure to perform a voice analysis, the result of the proceeding would have been different.

Second, Buchanan faults Donovan for not calling Soria as a witness for the defense.[8] He provides a declaration from Soria dated November 28, 2011. (Traverse, Exh. 5) Soria states, in pertinent part:

> I have never been asked to testify in Mr. Buchanan's behalf or else I would have done it right away. . . . I plead guilty as charged because I sold to the Governments Informant "Shaun Guerra" a.k.a. "Heuro" or "Allstar" on the following dates May 28, 2004, June 3, 2004 and July 8, 2004. I take full responsibility for my own actions the drugs were <u>mine</u> the money the Informant exchanged for the drugs them 3 times <u>I</u> spend it. I act on my own.

By this claim, Buchanan again fails to show deficient performance. An attorney makes a strategic choice in deciding whether to put a witness on the stand. Sometimes, *not* calling a witness is wise strategy. *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1998) ("Furthermore, the decision not to call Washington as a witness appears to be a reasonable trial tactic. Washington was a convicted felon with numerous prior felony convictions. His credibility could have

---

[8] Although this argument was not raised until the Traverse, the Court considers it here in an abundance of caution. *See Cacoperdo*, 37 F.3d at 507.

been at issue.")  Soria's trustworthiness would have been an issue.  She had already
pled guilty.  The jury saw evidence of her with Buchanan.  Furthermore, the jury
heard recordings in which she seemingly implicated Buchanan.  Putting her on the
stand would have been a gamble.  Donovan did not take that gamble.  That was not
unreasonable.

He also has failed to show prejudice.   The record reflects strong evidence of
Buchanan's guilt.  There are no grounds to believe that but for Donovan's failure to
call Soria as a witness, the result of the proceeding would have been different.

Finally, Buchanan is simply wrong that he received "no defense."  By giving
an opening statement and closing argument and cross-examining government
witnesses, Donovan subjected the prosecution's case to meaningful adversarial
testing.  Because Buchanan has not demonstrated deficient performance, his claim of
ineffective assistance by his trial counsel fails.  The Court need not reach
*Strickland*'s second prong.

### B.    Ineffective Assistance of Appellate Counsel

Buchanan claims that Gerson Simon, his appellate counsel, was ineffective by
moving to withdraw and submitting a brief pursuant to *Anders v. California* without
first meeting with him.  This argument lacks merit.

First, Buchanan fails to show that Simon's performance was deficient.  "An
attorney who finds no non-frivolous issues for appeal does not necessarily have to
meet with his or her client in person before filing an *Anders* brief, so long as the
*Anders* notice requirements are met, in order to satisfy his or her duty to the client."
*Dones v. United States*, No. 08 Civ. 926, 2010 U.S. Dist. LEXIS 4237, at *22
(S.D.N.Y. Jan. 20, 2010); *Lucas v. Sec'y, Dep't of Corr.*, No. 6:09-cv-1554, 2011
U.S. Dist. LEXIS 34069, at *12 (M.D. Fla. March 17, 2011) ("Petitioner's appellate
counsel did not provide inadequate representation merely because he did not meet
with Petitioner prior to filing the *Anders* brief.").  Buchanan has not shown why a

pre-filing consultation with him was required.

Second, Buchanan has not shown prejudice. Upon review of Simon's *Anders* brief, the Ninth Circuit found no meritorious reasons for appeal. Furthermore, it gave Buchanan an opportunity to file a pro se brief. Buchanan failed to take advantage. That decision does not make his attorney's prior assessment of the case incorrect. Because Buchanan has not demonstrated deficient performance or prejudice, his claim of ineffective assistance by his appellate counsel is denied.

## V.    Actual Innocence

In his Traverse, Buchanan asserts that he is innocent. Ordinarily, the Court will not consider claims raised for the first time in a Traverse. *See Cacoperdo*, 37 F.3d at 507 ("A Traverse is not the proper pleading to raise additional grounds for relief."). In an abundance of caution, however, the Court will construe these assertions as a freestanding claim of actual innocence and consider them here.

The Ninth Circuit recognizes a claim of actual innocence that is cognizable under § 2255. *United States v. Berry*, 624 F.3d 1031, 1038 n.5 (9th Cir. 2010). The bar is extremely high, however. Buchanan "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).

Here, Buchanan alleges that evidence against him "was planted throughout the case[.]" (Traverse 7.) He alleges that Guerra lied about the meaning of code words used during recorded conversations, and assert that he really sold him "baseball/football collector cards"—not drugs. (Traverse 9-10.) He points to purported inaccuracies in government transcripts and speculates that the government "appears to have, perhaps, fabricated evidence." (Traverse 17.) Finally, he argues that the Soria interview and Torres wiretap are "new evidence." The Court finds no merit in these claims, which rest almost entirely on his unsupported allegations of a corrupt investigation. The limited evidence he does provide fails to cast doubt on his

conviction, much less prove that he is probably innocent. Buchanan has fallen well short of his burden.

## VI.    Evidentiary Hearing

Buchanan requests an evidentiary hearing. The request is denied. When viewed against the record, Buchanan's allegations of ineffective assistance do not state a claim on which relief could be granted. *See Schaflander*, 743 F.2d at 718 (denying a hearing where allegations, even if true, did not state a claim for relief). His remaining claims are procedurally barred. Under these circumstances, an evidentiary hearing is not warranted.

## VII.    Certificate of Appealability

Under Federal Rule of Appellate Procedure 22(b), there is no appeal from the final order in a proceeding under § 2255 unless a "circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court has rejected a claim on the merits, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Buchanan has failed to make the required showing. Accordingly, the Court denies Buchanan a certificate of appealability.

//

//

**CONCLUSION**

For the reasons given above, the Court denies Buchanan's motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. The Court also denies Buchanan a certificate of appealability.

**IT IS SO ORDERED**.


DATED: September 3, 2013

Hon. Roger T. Benitez
United States District Judge